United States District Court
Southern District of Texas
**ENTERED**
December 19, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NORBERTO VALLES, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-01725 |
| | § | |
| BAYOU PLACE, L.P., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Plaintiff Norberto Valles's Motion to Remand ("Valles's Motion to Remand") (Dkt. 16) and Intervenors Undrea Bailey's, Individually and as Next Friend of J.B. (Minor), and Lillian Bailey's Motion to Remand ("Bailey's Motion to Remand") (Dkt. 19) (collectively "Motions to Remand"). Having considered the parties' arguments, the record, and the applicable law, I recommend that the Motions to Remand be **GRANTED**.

## BACKGROUND

In August 2017, Hurricane Harvey made landfall on Texas and Louisiana, wreaking havoc on many cities, including Houston, Texas. In the aftermath of the historic storm, cities across Texas immediately began to rebuild. This lawsuit concerns tragic injuries suffered by Plaintiff Norberto Valles ("Valles") and Intervenor Undrea Bailey ("Bailey") (collectively, "Plaintiffs"), both of whom were caught in a flash electrical explosion while

they were repairing and replacing electrical equipment damaged by Hurricane Harvey in the basement of the Bayou Place entertainment complex in downtown Houston.[1]

Valles filed Plaintiff's Original Petition in October 2017, alleging negligence, negligence per se, and gross negligence claims against several entities that all purportedly played a role in facilitating the remediation efforts at Bayou Place. Plaintiff's Original Petition did not include any claims against the removing party, The Cordish Company ("Cordish"). Valles added Cordish to the lawsuit in December 2017, when he filed a Second Amended Petition. Valles served Cordish with the Second Amended Petition on January 5, 2018. On April 2, 2018, Valles non-suited all claims against Cordish. Important here, Cordish remained a non-party until Valles filed his Tenth Amended Petition on April 30, 2019, reasserting a negligence claim against Cordish.

On May 9, 2019, Cordish accepted service of Valles's Tenth Amended Petition and filed a Notice of Removal. In the Notice of Removal, Cordish contends that removal is proper for several reasons. First, Cordish argues that removal is proper under 28 U.S.C. § 1442(a)(1), which is also known as the "Federal Officer Removal Statute." Next, Cordish argues that removal is proper based on 28 U.S.C. § 1442(a)(2), which is sometimes called the "Federal Title Dispute Statute." Lastly, Cordish avers that removal is proper based on the so-called "*Grable* Doctrine" and 28 U.S.C. § 1331.

---

[1] In May 2018, Bailey, Individually and as Next Friend of J.B., and Lillian Bailey ("Intervenors") intervened in Valles's ongoing suit. At the time of removal, Intervenors had not asserted any claims against The Cordish Company. After removal, Intervenors filed a Fifth Amended Intervenor Complaint, which includes a claim against The Cordish Company. *See* Dkt. 34. The Cordish Company has moved to strike that filing. *See* Dkt. 36.

Valles and Intervenors argue that I should remand this suit because Cordish untimely filed its Notice of Removal and each of Cordish's stated grounds for removal is flawed. *See* Dkts. 16, 19.

After briefly setting forth the applicable legal standard that will guide my analysis, I will address the timeliness argument. Then I will consider each of Cordish's grounds for removal.

## REMOVAL LEGAL STANDARD

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. *See* 28 U.S.C. § 1441(a). "The removing party bears the burden of showing that federal jurisdiction exists and that removal is proper." *Balachander v. AET Inc. Ltd.*, No. CIV.A. H-10-4805, 2011 WL 4500048, at *4 (S.D. Tex. Sept. 27, 2011). "To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

Generally, parties removing an action must file a notice of removal within 30 days after receipt of the plaintiff's initial pleading. *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."). If, however, the initial pleading does not articulate the details of the plaintiff's claims, the 30-day time period begins to run on the date that the defendant receives an amended complaint or "other

3

paper" specifically indicating the grounds for removal. *See* 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.").

## TIMELINESS OF CORDISH'S REMOVAL

Plaintiffs contend that Cordish's Notice of Removal is untimely. They argue that Cordish's 30-day removal window began to run on January 5, 2018, the day it was served with the Second Amended Petition. And, therefore, Cordish's removal window closed long before April 2, 2018, the day Valles dismissed Cordish from the suit. In support of this argument, Plaintiffs explain that the Second Amended Petition is virtually identical to the Tenth Amended Petition. They contend that if the removability of the lawsuit was discoverable based on the Tenth Amended Petition, it also must have been discoverable based on the Second Amended Petition.

Cordish disputes Plaintiffs' analysis. Cordish contends that it did not ascertain the suit's removability under the Federal Officer Removal Statute until it learned about the Federal Emergency Management Agency's ("FEMA") involvement in the Bayou Place remediation effort. Cordish explains that the Second Amended Petition did not reveal FEMA's involvement and, thus, the potential removability of the suit did not become apparent until March 22, 2019, when a deponent testified regarding FEMA's alleged involvement in the underlying remediation effort. In other words, Cordish contends that the March 22 deposition is functionally an "other paper" under 28 U.S.C. § 1446(b)(3).

However, because Cordish was not a party at the time of the March 22 deposition, Cordish argues that its window to remove the suit opened for the first time on May 9, 2019—the day it was served with the Tenth Amended Petition, which brought it back into the suit.

My review of this issue begins with comparing the Second Amended Petition and Tenth Amended Petition. Plaintiffs are correct that the two pleadings are very similar. However, in my view, they are different in one material aspect. The Second Amended Petition alleges that the fire and explosion underlying this suit occurred "in a basement located at 1054 Sabine Street, Houston, Texas 77007." Dkt. 16-2 at 5. The Tenth Amended Petition alleges that the same fire and explosion occurred "in a basement located at or near Bayou Place at 500 Texas St. Houston, Texas 77002." Dkt. 1-42 at 3. At oral argument, the parties all agreed that the Sabine Street address was incorrect. Given that the Second Amended Petition contains an incorrect address (Sabine Street) and does not reference FEMA in any way, I find that the Second Amended Petition could not have alerted Cordish about FEMA's alleged involvement in remediating problems "at or near Bayou Place at 500 Texas St." *Id.*

I now turn to the March 22 deposition. The Fifth Circuit has held that a transcript of deposition testimony can constitute an "other paper" under 28 U.S.C. § 1446(b)(3). *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) ("[A] transcript of the deposition testimony is 'other paper.'"). More recently, the Fifth Circuit adopted a "bright-line rule" that "Section 1446(b)(3)'s removal clock begins ticking upon receipt of the deposition transcript." *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 612 (5th Cir. 2018). This case, therefore, presents a unique situation because the relevant deposition

5

testimony occurred when Cordish was no longer a party to the suit; so, even if Cordish received the transcript the same day of the March 22 deposition, it could not have filed a notice of removal. Given this peculiar factual circumstance, I find that Section 1446(b)(3)'s removal clock had to begin ticking on May 9, 2019—the date Cordish was served with the Tenth Amended Petition. This would have been Cordish's first opportunity to remove the lawsuit based on information revealed in the deposition transcript. Since Cordish removed the case on the same day it was served with the Tenth Amended Petition, I find that Cordish timely filed its notice of removal.

## THE FEDERAL OFFICER REMOVAL STATUTE

Cordish contends that federal jurisdiction exists pursuant to the Federal Officer Removal Statute, which provides:

> (a) A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.

28 U.S.C. § 1442(a)(1). "To claim removal as a 'person acting under' an officer of the United States, a party must show (1) that he is a person within the meaning of the statute; (2) that he acted under the direction of a federal officer; (3) that a causal nexus exists between his actions under color of federal office and the plaintiff's claims; and (4) that he

6

has a colorable federal defense."[2] *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 355 (5th Cir. 2019). "If the moving party satisfies these requirements, that party gains access to a federal forum even if the plaintiff's complaint fails to raise a federal question." *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695, 699 (S.D. Tex. 2002).

Cordish argues that it satisfies the standard for removal under the Federal Officer Removal Statute. First, Cordish argues that it clearly qualifies as a "person" under the statute. Next, Cordish contends that FEMA controlled and directed its remediation efforts,

---

[2] Recently, in *Latiolais v. Huntington Ingalls, Inc.*, a Fifth Circuit panel applied this four-element formulation of the Federal Officer Removal Statute but called into question whether the "causal nexus" prong should remain viable in light of language changed by the 2011 amendment to Section 1442. 918 F.3d 406 (5th Cir. 2019). Specifically, the *Latiolais* court explained that the four-element test

> should be reconsidered en banc in order to align our precedent with the statute's evolution. As discussed above, "[b]efore 2011, § 1442 allowed the removal of a state suit against a federal officer, or person acting under a federal officer, only when the state suit was 'for any act under color of such office.'" *Zeringue v. Crane Co.*, 846 F.3d 785, 793 (5th Cir. 2017). In 2011, however, Congress amended the statute "to allow the removal of a state suit 'for or relating to any act under color of such office.'" *Id.* Thus, Congress specifically added the words "relating to" into § 1442. Those words have meaning, and the meaning is plainly broader than that of the predecessor provision.

*Id.* at 412. Based on the addition of the "relating to" language, the *Latiolais* panel concluded that "causal nexus standard simply does not give effect to the words 'relating to.'" *Id.* In order to consider the issue, the Fifth Circuit has voted to rehear the case en banc. *See Latiolais v. Huntington Ingalls, Inc.*, 923 F.3d 427 (5th Cir. 2019).

Cordish and co-defendant Bayou Place, L.P. recently requested that I wait until after the en banc Fifth Circuit rules in *Latiolais* before deciding the Motions to Remand. *See* Dkts. 46–48. I decline to do so because my ruling does not rest on the "causal nexus" prong, which seems to be the specific prong at the heart of the Fifth Circuit's en banc review. *See Par. of Cameron v. Auster Oil & Gas Inc.*, No. 2:18-CV-00677, 2019 WL 4734394, at *9 (W.D. La. Sept. 26, 2019) ("Defendants have failed to satisfy the 'acting under' requirement for federal officer jurisdiction and accordingly, the ruling in *Latiolais* will not change this Court's ruling on the Motions to Remand."). Accordingly, Cordish's and Bayou Place, L.P's requests are denied as moot.

7

thereby satisfying the second requirement. Third, Cordish argues that a causal nexus exists between its FEMA controlled and directed actions and Valles's negligence claims. Finally, Cordish contends that it has stated a colorable federal defense related to its actions and Plaintiffs' claims. Specifically, Cordish argues that the Government Contractor Defense is its colorable federal defense.[3]

Because Plaintiffs acknowledge that Cordish easily satisfies the first prong,[4] they only attack requirements two through four.

The second prong requires Cordish to show that it was acting under the direction of a federal officer. Cordish's argument is convoluted and gets bogged down by superfluous facts and tangential arguments. Boiled down to its basics, Cordish argues that FEMA, acting in accordance with a presidential declaration under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121 *et seq.* (the "Stafford Act"), provided the State of Texas federal funds to aid in ongoing post-Harvey remediation

---

[3] The Government Contractor Defense "provides immunity to contractors for conduct that complies with the specifications of a federal contract." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016). "For the government contractor defense to apply, a defendant must establish that: '(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.'" *Wilson v. CB&I Fed. Servs., LLC*, No. CV 17-376-SDD-EWD, 2018 WL 1279015, at *8 (M.D. La. Feb. 21, 2018) (quoting *Zeringue*, 846 F.3d at 790).

[4] Plaintiffs do not dispute that Cordish as a corporation qualifies as a "person" within the meaning of Section 1442. "Both the Supreme Court and the Fifth Circuit have recognized that the removal statute applies to both private persons and corporate entities who lawfully assist the federal officer in the performance of his official duty." *Templet v. Avondale Indus., Inc.*, 274 F. Supp. 3d 469, 481 (E.D. La. 2017) (internal quotation marks and citations omitted). Therefore, I find that Cordish has sufficiently shown that it is a "person" within the meaning of the Federal Officer Removal Statute.

efforts. *See* Dkt. 1-5 (notice of the presidential declaration of a "major disaster" for the State of Texas). Cordish contends that the FEMA aid necessarily required Houston, and the various contractors doing work on Houston's behalf, to ensure strict compliance with FEMA's rules and regulations related to the allocation of federal funds. Cordish contends that FEMA ensured compliance with its funding rules by conducting inspections at various remediation worksites. In Cordish's view, FEMA's providing of federal funds and attendant audit and inspection responsibilities demonstrate that Cordish was "acting under" the subjection, guidance, or control of FEMA. Cordish is mistaken.

The Supreme Court has explained that "[t]he word 'under' must refer to what has been described as a relationship that involves acting in a certain capacity, considered in relation to one holding a superior position or office." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007) (internal quotation marks and citation omitted). "This relationship 'typically involves subjection, guidance, or control.'" *Zeringue*, 846 F.3d at 793 (quoting *Watson*, 551 U.S. at 151). "[T]he private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152. As such, the Supreme Court has held that "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Id.* at 153. The Fifth Circuit has further clarified that "[a]bsent [a] relationship between the federal government and a private firm . . . *Watson* instructs that even onerous and specifically enforced regulations do not suffice to show the firm was 'acting under' a federal officer." *City of Walker v. La., through Dep't of Transp. & Dev.*, 877 F.3d 563, 571 (5th Cir. 2017).

9

This is why courts that have considered whether a party was "acting under" FEMA have rigorously analyzed the details surrounding FEMA's involvement, instead of simply relying on the federal laws, rules, and regulations pertaining to FEMA. For example, in *Wilson*, the court found that "CB&I was acting under FEMA's direction in its maintenance obligations with respect to the FEMA trailers used after the Baton Rouge Flood." 2018 WL 1279015, at *7. In explaining this finding, the court did not rely on FEMA's mere involvement to satisfy the "acting under" prong. Instead, the court thoroughly analyzed a certain contract entered into between CB&I and FEMA, explaining that "[t]he foregoing contract provisions demonstrate that CB&I was acting under FEMA's direction." *Id. See also In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. 12-548, 2012 WL 1448132, at *3–5 (E.D. La. Apr. 26, 2012) (finding that defendant was "acting under" FEMA after analyzing provisions of defendant's contract with FEMA). This case, however, does not contain any contractual arrangement between Cordish and FEMA. Despite Cordish's assertion that it was subject to FEMA inspection and oversight based on federal funding, it has provided no basis for me to find that FEMA ever did anything more than ensure simple compliance with applicable federal regulations. This is insufficient to show that Cordish was "acting under" the subjection, guidance, or control of FEMA. *See Watson*, 551 U.S. at 153; *City of Walker*, 877 F.3d at 571. "[A]t most, [Cordish has] shown activities undertaken in compliance with federal regulations, which is not sufficient to remove under § 1442(a)." *Auster Oil & Gas Inc.*, 2019 WL 4734394, at *9.

Because I find that Cordish has not shown that it was "acting under" FEMA within the meaning of Section 1442, I need not separately address the "causal nexus" and

"colorable federal defense" requirements. *See id.* (analyzing "acted under" prong and concluding that "the Court need not separately address causation or the requirement that Defendants have a colorable federal defense"); *Bartel v. Alcoa S.S. Co.*, 64 F. Supp. 3d 843, 856 (M.D. La. 2014) ("The Court need not address [Defendant's] argument that it has a colorable federal defense in detail because . . . [it] has not met its burden of establishing the second prong of the federal officer removal analysis."); *Creighton v. Fleetwood Enters., Inc.*, No. CIV.A. 07-7194, 2009 WL 1229793, at *3 (E.D. La. May 5, 2009) ("Because the Court finds that the defendants have not shown that [Defendant] 'acted under' FEMA within the meaning of section 1442, . . . there is no need to address the availability of a federal defense.").

## THE FEDERAL TITLE DISPUTE STATUTE

The Federal Title Dispute Statute, in relevant part, provides that:

(a) A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

28 U.S.C. § 1442(a)(2). Reliance upon this statute requires satisfaction of two prongs: (1) "the title to the property in controversy must derive from an officer of the United States" and (2) "the controversy regarding the property must affect the validity of any law of the United States." *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 809 F. Supp. 2d 524, 534 (E.D. La. 2011) (citation omitted).

11

In their Motions to Remand, Plaintiffs challenge Cordish's ability to satisfy both prongs. But for the purpose of this discussion, I solely focus on the second prong.

Plaintiffs aver that Cordish has not challenged the validity of any federal law. In response, Cordish argues that

> Plaintiffs are not merely arguing that federal laws do not provide a defense; instead, they seek to ignore and invalidate federal laws applicable to the Army Corps of Engineers; the Stafford Act; and disaster relief statutes discussed in the removal petition. Plaintiffs' challenge to the application seeks to invalidate them where they properly apply, which is a fundamental concern to the government.

Dkt. 23 at 26. In other words, Cordish contends that Plaintiffs dispute whether it may rely upon certain federal laws in defense of Valles's claims. This is insufficient to satisfy the second prong.

"The second prong of this test requires more than the mere possibility that a party will argue for a position inconsistent with federal law—it requires a claim that a federal law is *invalid*." *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 632 (S.D.N.Y. 2013) (collecting cases). "The present litigation presents no attack upon the *validity* of any law of the United States. Yes, [Cordish] allegedly ha[s] federal law matters [it] wish[es] to raise as a defense to Plaintiffs' action, but such defensive matters do not supply removal jurisdiction under 28 U.S.C. § 1442(a)(2)." *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 669 (E.D. Tex. 1999).

Accordingly, Cordish's removal under the Federal Title Dispute Statute pursuant to 28 U.S.C. § 1442(a)(2) is improper.

## THE *GRABLE* DOCTRINE AND 28 U.S.C. § 1331

Cordish next argues that its removal is appropriate because "[f]ederal question jurisdiction exists under the *Grable* [D]octrine." Dkt. 1 at 32. According to Cordish, the *Grable* Doctrine applies because Valles's claims "implicate multiple federal statutes which alter the standard of care and impact causation analyses, and multiple federal statutes and doctrines which give rise to derivative immunity." *Id.* at 31–32. Plaintiffs contend that Cordish cannot satisfy any of the *Grable* Doctrine criteria.

I first explain the so-called *Grable* Doctrine. I will then address its alleged applicability in this case.

### 1. What is the *Grable* Doctrine?

The district courts have federal-question jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Cases typically arise under federal law when federal law creates the plaintiff's cause of action. *See Gunn v. Minton*, 568 U.S. 251, 257 (2013). Although this accounts for the vast majority of federal question cases, the Supreme Court has nonetheless identified a slim category of state-law claims that give rise to federal-question jurisdiction. *See id.* at 257–58. The Supreme Court first described the slim category of claims in *Grable & Sons Metal Productions, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005).

Interpreting *Grable*, the Fifth Circuit has explained that "federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial

13

responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). This four-factor test is sometimes referred to as the *Grable* Doctrine. Notwithstanding the existence of the *Grable* Doctrine, "[f]ederal-question jurisdiction over state-law claims is [still] by far the exception, not the rule." *PlainsCapital Bank v. Rogers*, 715 F. App'x 325, 328 (5th Cir. 2017).

### 2. Cordish cannot rely on the *Grable* Doctrine.

Cordish's reliance on the *Grable* Doctrine begins and ends with the doctrine's first prong because Cordish cannot demonstrate that resolving a federal issue is necessary to the resolution of Valles's state law negligence claims.

In the Notice of Removal, Cordish attempts to satisfy the first prong by invoking the Fifth Circuit's decision in *Board of Commissioners of Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Company, L.L.C.*, 850 F.3d 714 (5th Cir. 2017). *See* Dkt. 1 at 36. Cordish argues:

> As explained by *Tenn. Gas*, resolving federal issues is necessary to resolve Plaintiffs' claims. "Here, one of the primary subjects of dispute between the parties is whether the federal laws in question may properly be interpreted to alter the standard of care. . . . Relatedly, the scope and limitations of a complex federal regulatory framework are at stake in this case, and disposition of the question whether that framework may give rise to state law claims as an initial matter will ultimately have implications for the federal docket one way or the other.["] *Tenn. Gas*, 850 F.3d at 725.

*Id.* (brackets omitted). In my view, Cordish's reliance on *Tennessee Gas* is misplaced.

In *Tennessee Gas*, the Fifth Circuit held that the plaintiff's negligence and nuisance claims necessarily raised a federal issue sufficient to justify federal jurisdiction because federal law created the duty and remedy underlying those claims. *See* 850 F.3d at 722–23.

14

The Fifth Circuit noted that the Louisiana Supreme Court had "explicitly rejected the prospect that a statutory obligation of 'reasonably prudent conduct' could require oil and gas lessees to restore the surface of dredged land." *Id.* at 723. The Fifth Circuit then explained that the plaintiff's negligence and nuisance claims could not "be resolved without a determination whether multiple federal statutes create a duty of care that does not otherwise exist under state law." *Id.*

In the Tenth Amended Petition, Valles alleges that Cordish and the other defendants were negligent in carrying out their remediation efforts and seeks actual, compensatory, and punitive damages. Unlike the plaintiffs in *Tennessee Gas*, Valles is not seeking any remedy that he would be unable to obtain "under any state law-based conception of negligence." *Id.* at 722. Indeed, Valles does not specifically reference or even hint at the applicability of any federal statute. This alone undermines Cordish's reliance on *Tennessee Gas*. But this does not end my inquiry because Cordish offered a more robust argument in response to Plaintiffs' Motions to Remand.

In its response to Plaintiffs' Motions to Remand, Cordish offers the following arguments to establish the first prong:

> Federal laws alter the standard of care in this case, or, in other words, Plaintiffs must establish that the duty elements of their various causes of action are satisfied in the context of federal laws that alter the standard of care in an emergency response setting. Moreover, and even more so because Defendants seek to include the Army Corps as a responsible third party, Plaintiffs must address whether they can establish causation with respect to Defendants in the context of federal laws which directly pertain to whether federal actors can be assigned comparative fault in a manner that alters whether Defendants can be assigned blame at all.

Dkt. 23 at 28. These arguments do not persuade me.

15

Although Cordish asserts that "[f]ederal law alter[s] the standard of care," it never bothers to explain in any meaningful detail what that actually means. *Id.* In the Notice of Removal, Cordish mentions several federal laws, including the Stafford Act, "Federal Tort Claims Act, Flood Control Act, and Flood Control Immunity Statute." Dkt. 1 at 36. However, Cordish does not identify the specific provisions of those statutes that supposedly alter the standard of care applicable to Valles's claims, nor does it describe how the standard of care is actually altered. In other words, I'm left to guess and speculate about how any one of four federal statutes may support Cordish's position. I am unwilling to do this in light of the fact that "[Cordish] bears the burden as the removing party to establish the federal court's jurisdiction." *Lowe v. Scott & White Health Plan*, No. 4:18-CV-791, 2019 WL 968882, at *2 (E.D. Tex. Feb. 28, 2019).

Having failed to sufficiently explain how the federal statutes affect Valles's state law negligence claims, Cordish is left with its arguments that the federal statutes might impair its ability to designate certain federal actors as responsible third parties and assign them comparative fault. This line of argument fails because it is totally focused on Cordish's defensive theories, which are clearly not necessary to resolve Valles's state-law negligence claims. As explained by the Seventh Circuit, "*Grable* does not alter the rule that a potential federal defense is not enough to create federal jurisdiction under § 1331." *Chi. Tribune Co. v. Bd. of Trs. of Univ. of Ill.*, 680 F.3d 1001, 1003 (7th Cir. 2012). *See also Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the

16

defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").

Consequently, I find that Cordish's removal under the *Grable* Doctrine is also improper.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, I **RECOMMEND** that Valles's Motion to Remand (Dkt. 16) and Intervenors' Motion to Remand (Dkt. 19) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Houston, Texas, this 19th day of December, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE